UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MARSHA A. SPRINGER,

                Petitioner,              Case No. 1:17-cv-1080

v.                                    Honorable Paul L. Maloney

SHAWN BREWER,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Marsha A. Springer is incarcerated with the Michigan Department of Corrections at the Women's Huron Valley Correctional Facility in Washtenaw County, Michigan.  On February 23, 2010, following a nine-day jury trial and nine days of deliberation in the St. Joseph County Circuit Court,[1] Petitioner was convicted of torture, in violation of Mich. Comp. Laws § 750.85, and first-degree child abuse, in violation of Mich. Comp. Laws § 750.136b(2).  The jury acquitted Petitioner of first-degree and second-degree murder. On April 16, 2010, the court sentenced Petitioner to concurrent prison terms of 225 months to 50 years for torture and 95 months to 15 years for child abuse.

       Petitioner, with the assistance of appointed counsel, appealed her convictions to the Michigan Court of Appeals, raising four claims:  (1) denial of due process by the admission of a

---

[1] The *voir dire*, arguments, all testimony, and the first four days of deliberation took place in the Kalamazoo County Circuit Court building.  The last five days of deliberation took place in St. Joseph County.  The jury was drawn from Kalamazoo County.  The parties attempted to seat a jury from St. Joseph County during October of 2009, but were unable to do so because so many St. Joseph County residents were familiar with the case.  (Jury *Voir Dire* I, Tr. II, ECF No. 8-12.)  For that reason, by stipulation of the parties, the court transferred the venue to Kalamazoo County.

gruesome autopsy photograph; (2) denial of due process by the exclusion of an email message from the prosecutor's expert concerning the extreme need for supervision of the victim; (3) denial of due process when the jury was permitted to ask over 200 questions; and (4) denial of due process by allowing the jurors to discuss the evidence on breaks prior to deliberating on the verdict. (Pet'r's Appeal Br., Pet'r's Supp. Appeal Br., ECF No. 8-38, PageID.3722, 3954.)  The court of appeals affirmed the convictions by opinion issued September 13, 2012.  (Mich. Ct. App. Op., ECF No. 8-38, PageID.3707-3718.)

Petitioner, again with counsel's assistance, sought leave to appeal to the Michigan Supreme Court, raising the same four grounds.  (Pet'r's Appl. for Leave to Appeal, ECF No. 8-39, PageID.4020.)  The supreme court denied leave to appeal by order entered March 20, 2013.  (Mich. Order, ECF No. 8-39, PageID.4018.)

Petitioner then returned to the trial court.  On February 4, 2014, she filed a *pro per* motion for relief from judgment raising three issues: (1) ineffective assistance of counsel for failure to pursue a defense of entrapment by estoppel; (2) ineffective assistance of counsel for failure to object to the due process and confrontation violations that occurred when the preliminary examination testimony of witness Gustavo Pop was introduced at trial; and (3) the pre-deliberation jury discussion issue that Petitioner had already raised on direct appeal.  (Pet'r's Mot. for Relief from J., ECF No. 8-32.)  By opinion and order issued July 24, 2014, the trial court denied relief. (Op. & Order, ECF No. 8-33.)

Petitioner applied for leave to appeal in the Michigan Court of Appeals and then the Michigan Supreme Court.  The court of appeals denied leave by order entered November 19, 2014.  (ECF No. 8-40, PagegID.4156.)  On September 30, 2015, the Michigan Supreme Court, in lieu of granting leave, vacated the trial court's denial of Petitioner's motion with respect to the

entrapment by estoppel issue, and remanded the case for a hearing on that matter.  (Order, ECF No. 8-41, PageID.4236.)  The supreme court denied leave to appeal with respect to the other issues. (*Id*.)

The trial court appointed counsel for Petitioner, conducted a hearing on the motion, and invited post-hearing briefs regarding the entrapment by estoppel defense.  On September 8, 2016, the trial court denied Petitioner's motion for relief from judgment.  (ECF Nos. 8-35, 8-36.) Petitioner then filed *pro per* applications for leave to appeal in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders entered May 9, 2017, and October 24, 2017, respectively.  (Mich. Ct. App. Order, ECF No. 8-42, PageID.4323; Mich. Order, ECF No. 8-43, PageID.4376.)

On December 7, 2017, Petitioner timely filed her habeas corpus petition raising four grounds for relief, as follows:

I.      Was trial counsel ineffective for failing to perform an investigation of key DHS/CPS entrapment by estoppel witnesses before choosing not to present said pretrial defense?  Did DHS/CPS employees testify at trial that the Springers had permission from community mental health to restrain their daughter at night with a homemade chain restraint?  Did [a] DHS/CPS employee testify that said restraint was necessary and had been authorized? Was the state court's factual findings of counsel's failure to raise the defense of entrapment by estoppel objectively unreasonable determination of the facts because counsel did not first investigate witnesses before deciding not to pursue entrapment by estoppel defense?  Was the state court's determination contrary to federal law for failing to adjudicate the claim under Strickland and its progeny?

II.     Did appellate counsel Randy Davidson perform ineffectively in failing to raise trial counsel's failure to implement the defense of entrapment by estoppel.

III.    [Were] trial and appellate counsel ineffective for failing to object to and raise the claim that the Michigan Supreme Court violated Petitioner's Fifth and Fourteenth Amendment due process guarantee to a fair and impartial jury by allowing jurors to discuss the case prior to its submission to them?

IV.    Did trial counsel provide ineffective assistance by failing to object to the
admission of preliminary examination testimony of Gustavo Pop?  Did
counsel's error deny Mrs. Springer of her Sixth Amendment right to
confront the witnesses against her.

(Pet'r's Memo. of Law, ECF No. 2, PageID.29-30.)

Respondent has filed an answer to the petition (ECF No. 7) stating that the grounds

should be denied because they are without merit.  Upon review and applying the standards of the

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA),

I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## **Discussion**

### I.    **Factual allegations[2]**

On February 27, 2008, police and firefighters responded to an emergency call

reporting a house fire at Petitioner's home in Centreville, Michigan.  Petitioner's daughter, Calista,

died in that fire.  She was chained to her bed and could not escape.

Petitioner and her husband, co-defendant Anthony Springer, restrained Calista to

her bed, ostensibly for her own protection.  Calista suffered from pervasive developmental disorder

(PDD) and had been diagnosed with several other disorders.  Calista required almost constant

supervision and, at night, it appears to be undisputed that she needed to be restrained or monitored

in some way.  The Springers attempted different methods of restraint; but, just days before the fire,

Calista had defeated the bed alarm system they were using.  Pending a better solution, the Springers

ran a chain, of the type typically used for a dog choke collar, around Calista's waist and then zip

tied the chain to the bed frame.

---

[2]The pretrial proceedings, trial, appeals, and post-conviction motions, for Petitioner and her husband, co-defendant
Anthony J. Springer, were handled together.  Petitioner's husband's habeas petition is also before the Court.  *Springer
v. Berghuis*, 1:15-cv-808 (W.D. Mich.).  The state court records in both habeas proceedings are substantially identical.
There is also substantial overlap in the issues Mr. and Mrs. Springer have raised in their respective habeas petitions.
The Court's analysis in resolving the petitions, therefore, is substantially the same in both cases.

The Springers contended that the chain and zip ties they used were necessary and, indeed, they used them with the knowledge and apparent blessing of the government agencies that were providing assistance or otherwise monitoring the Springers.  That "blessing" purportedly occurred in 2004 when a Department of Human Services worker (DHS) investigated a claim that Calista's hair had been pulled out.  At that time, Calista told the DHS worker that she was chained to the bed at night.  At trial, Mr. Springer indicated that Calista was lying then.  He insisted that the chain and zip ties were a recent innovation at the time of the fire.  Mrs. Springer did not testify at trial; however, she testified at the post-conviction motion evidentiary hearing and indicated that the chain and zip tie solution may have been in use during 2004 when DHS was investigating.  It is difficult to reconcile the Springers' different versions of what restraints were used and when they were used.

The defense argued that Petitioner and her husband were loving parents who did the best they could with an impossible situation.  The prosecutor contended that the Springer's chaining of Calista to her bed was nothing short of torture.

The jurors plainly agonized over deciding the Springer's fate.  They posed several questions during deliberations and suggested to the court several times that they were not likely to reach a verdict.  The jurors even asked if they could convict the Springers of a lesser—but not lesser-included—charge.  Eventually, the jurors acquitted the Springers of first-degree and second-degree murder charges, but convicted them of torture and child abuse.

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell*

*v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy

this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Ineffective assistance

All of Petitioner's habeas issues include a claim of ineffective assistance from her trial or appellate counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish an ineffective assistance of counsel claim, petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

## A.    Entrapment by estoppel (habeas issues I and II)

Petitioner claims that her trial counsel was ineffective for failing to raise entrapment by estoppel as a defense to the charges.  The Michigan Court of Appeals described the entrapment by estoppel defense in *People v. Woods*, 616 N.W.2d 545 (Mich. Ct. App. 2000) as follows:

> Though Michigan appellate courts have not applied the doctrine of entrapment by estoppel, the federal courts have applied this defense where a citizen has reasonably relied on a government agent's erroneous representation that certain conduct was

> legal, such that prosecution would be unfair under the circumstances.  *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959); *United States v. Levin*, 973 F.2d 463 (C.A.6, 1992).  We recognize that entrapment by estoppel—which is really a variation on the conventional entrapment defense—may, in certain limited circumstances, preclude prosecution.  When a citizen reasonably and in good faith relies on a government agent's representation that the conduct in question is legal, under circumstances where there is nothing to alert a reasonable citizen that the agent's statement is erroneous, basic principles of due process should preclude prosecution.  However, when a citizen who should know better unreasonably relies on the agent's erroneous statement, or when the "statement" is not truly erroneous, but just vague or contradictory, the defense is not applicable.

*Woods*, 616 N.W.2d at 548-549.  The *Woods* court articulated several elements of entrapment by estoppel: "The entrapment by estoppel defense applies where the defendant establishes by a preponderance of the evidence that (1) a government official (2) told the defendant that certain criminal conduct was legal, (3) the defendant actually relied on the government official's statements, (4) and the defendant's reliance was in good faith and reasonable in light of the identity of the government official, the point of law represented, and the substance of the official's statement."  *Id*. at 558 (quoting *United States v. West Indies Transport, Inc.*, 127 F.3d 299, 313 (3d Cir. 1997)).  The *Woods* court borrowed a fifth element from a Sixth Circuit statement of the doctrine: "[and (5)] given the defendant's reliance, the prosecution would be unfair."  *Id*. at 559 (citing *United States v. Levin*, 973 F.2d 463, 468 (6th Cir. 1992)).

The elements of the entrapment by estoppel are not fact questions for the jury; instead, an entrapment by estoppel defense presents questions of law for the trial court to decide.  *Woods*, 616 N.W.2d at 554.  The trial court must conduct a separate evidentiary hearing  *Id*.  At the hearing, the defendant bears the burden of proving entrapment by a preponderance of the evidence.  *Id*.

Petitioner contends that the circumstances surrounding the resolution of the DHS investigation in 2004 plainly raise the possibility of an entrapment by estoppel defense.  She claims

that the DHS worker then—and other workers before and after—were aware of the Springers'
attempts to restrain Calista at night and condoned those practices.

Even if defense counsel had not independently considered the possibility of the
defense, the trial judge pointed it out at a hearing on August 31, 2009:

> THE COURT:  That's another interesting factor that's not been raised is that this
> was brought to the State's attention back in 2004, this allegation which has led to a
> charge of child abuse and torture.  The State investigated it and did not do anything
> to stop it.  So they were clearly aware of the claim in 2004.  One of the questions I
> had was whether or not there's an argument that—to be—to be raised in that regard
> that the State's involvement condoning the use of the chain by not taking any action
> would raise any argument for the defense in terms of due process rights, but that's
> not been raised here.

(Mot. Hr'g Tr., ECF No. 8-7, PageID.755-756.)  Petitioner claims that the court's statement should
have, but did not, prompt action by Petitioner's counsel or her husband's counsel.

At the evidentiary hearing on Petitioner's motion for relief from judgment, counsel
explained why they did not pursue the defense.  Petitioner's counsel testified that the defense was
not "well grounded."  (Evidentiary Hr'g Tr., ECF No. 8-34, PageID.3621.)  Counsel tried to find
someone who "told [the Springers] to do this."  (*Id*., PageID.3624.)  He could not.  The closest
counsel got was the conclusion that government employees may have been condoning the use of
some level of restraint.  (*Id*.)  Indeed, when DHS worker Pat Skelding testified at trial, the validity
of the entrapment defense looked even worse.  Counsel recalled that Skelding testified she spoke
with Petitioner and her husband and told them that she (Skelding) was not comfortable with the
restraints—whatever they may have been at that time—because of the fire risk.  (*Id*.,
PageID.3622.)

The viability of the defense was undercut further by Petitioner's husband's
testimony.  He insisted that the combination of chain and zip tie to the bed frame had only been
used for a few days at the time of the fire and had not been used before.  Accepting as true Mr.

Springer's testimony, even if Skelding had approved the 2004 restraints, they would have been

different restraints—and according to Mr. Springer less severe restraints—than the chain and zip

tie restraint that resulted in Calista's death.

In resolving Petitioner's ineffective assistance claim, the trial court expressly

applied the *Strickland* standard. (Mot. Hr'g Tr., ECF No. 8-34, PageID.3504-3505.) The trial

court applied that standard to the facts mentioned above, concluding that Petitioner had failed to

show that her counsel's failure to raise the claim was professionally unreasonable or that the failure

prejudiced her:

> [T]he next question is would [the entrapment by estoppel defense] have applied;
> and I'm ruling that it wouldn't have. I don't find that sections one, two, or four
> were done. The government official never told them that ·chaining their daughter
> to a bed with a dog chain and zip ties to the extent where she couldn't lift her body
> up even a half inch would be legal and would be allowed and there's no reasonable
> person that could believe that it could be.
>
> When they received word that she was being restrained with dog chains, they went
> to her home and questioned the parents. The parents denied that that was the case,
> invited them to go up and look at the room, denied that they were chaining the child
> but that they were restraining her.
>
> It is true that they did indicate that she could be restrained-she should be restrained.
> They offered different methods of restraint: alarms, belts, door alarms, those types
> of things. They never said, yes, go ahead and chain your daughter to the bed to the
> point where she can't move, she can't get up if she needs to. If there's a fire, she
> can't get away.
>
> The state trooper that broke into the window to try and rescue her was able to grab
> her body; but, due to her confinement with the chains and the zip ties, he couldn't
> even lift her off the bed and had to leave the room as the fire was so intense at that
> point that he could not remove her.
>
> This was well after the family was up. Mrs. Springer was already doing
> housekeeping around the home, and the other people were already gone. So I don't
> know at what point they planned on ever removing her from that bed, if they did
> plan to.
>
> But there's no reasonable person to believe that they could restrain their child-no
> matter how mentally impaired or difficult she was-in that manner, no more than
> they could change her-cage her in a dog cage, chain her to the basement pillar, or

anything else that could have been done and they could rely on the statement that, yes, you can restrain her.

This was not what the government officials told them.  It was four years from the time of the actual offense before the last time a government official had been there, and they denied that there was any dog chains or zip ties being used, even though later it was confirmed, coincidentally, that that was the exact same manner that they found her four years later after they denied that they were doing it.

In addition, Mr. Springer indicated he had only started using that method three days before, so there was no way for the government to have been aware of it and condoned its use and indicated that it was legal.

The use of the word restrain has been muddied here.  The government may have said you can restrain your child in order for her safety.  They provided methods to do so.

[The Springers] then removed their child from school so there was no more complaints from protective services and she wouldn't be bullied by her fellow classmates and she wouldn't have any other issues.

But this use of this method does not meet the requirements of entrapment by estoppel.

In passing, the federal court that reviewed the civil case, the other courts that reviewed the civil case, has all ruled the same, that the government officials did not knowingly allow this behavior to take place and found no liability on their part for this and dismissed all the cases against the DHS and the workers for similar issues. They found that it was not and is not a valid reason to do it.

For those reasons, I would indicate that, although it may have been ineffective to try, it was not ineffective to bring a fruitless motion that they knew from their investigation the elements weren't there.  So, for those reasons, I'll deny the motions and indicate that the judgment stand.

And I would have denied the entrapment by estoppel by a preponderance of the evidence, having heard all the testimony at trial and having heard the evidence from the DHS workers, the parties, and the others that there was no evidence to support entrapment by estoppel on the government.

(Decision Tr., ECF No. 8-36, PageID.3664-3666.)[3]

---

[3] The federal civil case referenced in the trial court's analysis is *Langdon v. Skelding et al.*, 1:10-cv-985 (W.D. Mich.) Calista's grandmother filed a suit under 42 U.S.C. § 1983 against DHS and CPS workers for the harms caused to Calista.  This Court granted the Defendants' motion to dismiss the complaint on September 30, 2011.

As set forth above, the trial court's determination that Petitioner's trial counsel was not ineffective is entitled to double deference from this Court.  The trial court's determination that the entrapment by estoppel defense was meritless, however, is entitled to more than deference—it is binding on this Court.

It is the prerogative of the state to define the elements of the crime and that definition binds the federal courts.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").  Although Due Process Clause guarantees criminal defendants a meaningful opportunity to present a complete defense, *California v. Trombetta*, 467 U.S. 479, 485 (1984), it is also the prerogative of the state to define whether or not a defense applies to a particular crime.  *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .").

Petitioner's ineffective assistance claim depends entirely on the viability of the entrapment by estoppel defense.  The scope and viability of the defense are state-law issues.  Even if the trial court reached the wrong conclusion on that issue, the federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010);

13

*Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The trial court's determination that the entrapment by estoppel defense has no merit, therefore, conclusively resolves that issue.

Moreover, in conclusively resolving that state-law issue, the trial court necessarily resolved the ineffective assistance claim as well.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Therefore, if the entrapment by estoppel claim is meritless, any claim that counsel failed to raise the defense is necessarily meritless as well.

Petitioner has not shown that the trial court's resolution of this ineffective assistance claim is founded upon factual determinations that are unreasonable on this record.  In fact, the trial court's factual determinations are eminently reasonable.  Moreover, Petitioner has failed to show that the state court's determinations (1) that her trial counsel was not ineffective for failing to raise the entrapment by estoppel defense and (2) that her appellate counsel was not ineffective for failing to raise trial counsel's failure to raise the entrapment by estoppel defense, are contrary to, or an unreasonable application of clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on these claims.

**B.**     **Failure to object to pre-deliberation juror discussion (habeas issue III)**

At the time of Petitioner's trial, the Michigan Supreme Court had adopted a pilot project to study the effects of certain jury reform proposals.  One of the participant judges was St. Joseph County Circuit Court Judge Paul E. Stutesman, Petitioner's trial judge.  The pilot program permitted jurors to pose questions to the witnesses and, when all of the jurors were present during

14

trial breaks, to discuss the evidence even before the close of proofs.  Mich. Admin. Order 2008-2.
Judge Stutesman employed both innovations during Petitioner's trial.[4]

Petitioner challenged the constitutionality of both practices on direct appeal.
Nonetheless, in setting out her habeas claim she contests only the practice of permitting
predeliberation discussion.  Looking beyond the statement of her habeas issue to her argument,
however, she also challenges the practice of permitting the jurors to pose questions to the
witnesses.  But, she does not challenge the constitutionality of the practices directly.  Instead, she
claims her trial counsel rendered ineffective assistance because he did not challenge the practices
and, further, her appellate counsel rendered ineffective assistance because he did not challenge the
practice of predeliberation discussion on direct appeal.[5]

Petitioner's claim that appellate counsel was ineffective for failing to raise the issue
of predeliberation discussion is plainly frivolous.  Appellate counsel challenged the practice in a
supplemental brief on appeal.  (Pet'r's Supp. Br., ECF No. 8-38, PageID.3953-3962.)  Petitioner's
claim that trial counsel did not challenge these practices, however, is accurate.  Whether or not
counsel's decision to forego those objections was professionally reasonable, Petitioner cannot
show any prejudice from the decision.

The Michigan Court of Appeals considered, and rejected, both challenges.  With
regard to counsel's challenge to the practice of permitting the jurors to prepare questions for the
witnesses, the court stated:

> Defendants' trial was conducted in accordance with Supreme Court Administrative
> Order No. 2008-2, which authorized several trial courts to implement a pilot project

---

[4] It is noteworthy that the State of Michigan did not end up adopting all of the innovations.  Although jurore
predeliberation discussion was eventually adopted, it was adopted only for civil trials.  (Mich. June 29, 2011, Order,
ECF No. 8-38, PageID.3981-4001.)

[5] Appellate counsel challenged the practice of permitting jurors to ask questions of the witnesses in Petitioner's initial
brief on appeal.  (Pet'r's Appeal Br., ECF No. 8-38, PageID.3749-3751.)

to study the effects of a jury-reform proposal.  One aspect of AO 2008-2 provided for juror questions:

> The court may permit the jurors to ask questions of witnesses.  If the court permits jurors to ask questions, it must employ a procedure that ensures that such questions are addressed to the witnesses by the court itself, that inappropriate questions are not asked, and that the parties have an opportunity outside the hearing of the jury to object to the questions.  The court shall inform the jurors of the procedures to be followed for submitting questions to witnesses.

In addition, at the time of defendants' trial, MCR 6.414(E) permitted jurors to ask questions of witnesses.

Marsha recognizes our Supreme Court, in *People v Heard*, 388 Mich 182, 187-188; 200 NW2d 73 (1972), permitted trial courts, in their discretion, to allow jurors to ask questions of witnesses.  But, relying on *State v Costello*, 646 NW2d 204 (Minn, 2002), where the Minnesota Supreme Court prohibited the practice of allowing jurors to question witnesses in a criminal trial, Marsha asserts that the practice of allowing jurors to submit questions to witnesses should stop.  However, we are bound by our Supreme Court's statement in *Heard*, 388 Mich at 187-188, that the questioning of witnesses by jurors is within the sound discretion of the trial court. *See People v Metamora Water Serv, Inc*, 276 Mich App 376, 387-388; 741 NW2d 61 (2007) ("It is the duty of the Supreme Court to overrule or modify caselaw . . . and the Court of Appeals and the lower courts are bound by the precedent established by the Supreme Court until it takes such action.").  Because Marsha does not claim that the trial court failed to utilize a procedure, as required by AO 2008-2, that ensured inappropriate questions would not be asked and because she does not claim that any question submitted by a juror and actually asked was improper, she has not established plain error affecting her substantial rights.  *Carines*, 460 Mich at 763.  Accordingly, we reject Marsha's claim that the trial court violated her due process right to a fair and impartial jury when it allowed the jurors to submit questions to be asked of witnesses.

(Mich. Ct. App. Op., ECF No. 8-38, PageID.3708) (footnote omitted).  With regard to the practice

of permitting predeliberation discussion of the evidence, the court stated:

> We acknowledge that the trial court's instruction to the jurors, pursuant to AO 2008-2, that they could discuss the evidence during trial recesses, was contrary to Michigan legal precedent.  See *People v Hunter*, 370 Mich 262, 269; 121 NW2d 442 (1963) ("It seems to us clear beyond any doubt that jurors should not be encouraged to discuss evidence they have heard and seen during the course of trial until all of the evidence has been introduced, the arguments to the jury made and the jury charged by the court . . . .").  However, pursuant to AO 2008-2, the trial court was authorized to instruct the jury as it did.

16

While the trial court instructed the jurors that they could discuss the evidence during trial recesses if they were all present, it also emphasized that such discussions were "to be considered tentative pending final presentation of all evidence, instructions, and arguments," and that the jurors were to keep "an open mind" and not to "decide the case until [they had] heard all the evidence, instructions of law, and arguments of Counsel." The trial court further instructed the jurors that defendants did not have to prove their innocence and that the prosecutor was required to prove the elements of the charged crimes beyond a reasonable doubt. Marsha claims that because the jurors submitted more than 200 questions to be asked of witnesses during trial, it is "highly likely" that the jurors failed to keep their pre-deliberation discussions tentative. However, jurors are presumed to follow their instructions, *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998), and there is no indication on the record that the jurors failed to heed their instructions. Accordingly, we hold that the trial court's instructions were sufficient to protect Marsha's right to a fair and impartial jury. There was no plain error affecting Marsha's substantial rights. *Carines*, 460 Mich at 763.

(Mich. Ct. App. Op., ECF No. 8-38, PageID.3709.)

This Court must defer to the Michigan Court of Appeals resolution of Petitioner's constitutional challenges unless the state court's determinations are contrary to, or an unreasonable application of clearly established federal law. The Sixth Circuit has recognized that "[t]he Supreme Court has not entertained a case involving premature deliberations." *Middlebrook v. Napel*, 698 F.3d 906, 910 (6th Cir. 2012). Similarly, the Sixth Circuit has concluded that there are no "Supreme Court decision[s] . . . holding that juror questioning violates the Sixth or Fourteenth Amendments." *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006). For that reason, allowing these practices in Petitioner's case could not be contrary to, or an unreasonable application of, clearly established federal law.

Where the Michigan Supreme Court had adopted a pilot program that included juror questions and permitted predeliberation juror discussion of evidence, where the trial judge had agreed to participate in that pilot program, and where the court of appeals ultimately concluded that those practices were constitutional, Petitioner cannot show that the result would have been any different if counsel had raised the constitutional objections. If counsel had objected to the

17

constitutionality of the practices, the objection would have been overruled as meritless.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley*, 706 F.3d at 752.  Therefore, Petitioner has failed to show that her trial or appellate counsel rendered ineffective assistance by failing to challenge the constitutionality of juror questions or predeliberation juror discussion of the evidence and she is not entitled to habeas relief on this claim.

### B.  Confrontation of Gustavo Pop

Finally, Petitioner contends that her trial counsel rendered constitutionally ineffective assistance by failing to object to the presentation of Gustavo Pop's testimony by a DVD of his preliminary examination testimony.  Although the DVD is not part of the record in this Court, the Respondent filed the preliminary examination transcript.  (Prelim. Exam. Tr. I, ECF No. 8-2.)  Fireman Pop's testimony was brief.  (*Id*., PageID.420-429.)  Most of Pop's testimony was cross-examination by Petitioner's trial counsel.  (*Id*., PageID.423-429.)  Pop and his partner attempted to enter Calista's bedroom, climbing a ladder to the second-floor window.  Initially the room was too hot.  They were able to cool it down sufficiently with a hose to enter.  Visibility was limited.  Pop located Calista by feel.  He tried to remove her.  He was able to get his hands underneath her, but could not lift her.  At that time, Pop could not discern why he was unable to lift Calista; but, recognizing that Calista was already dead, she was left in the room for the investigation.

Petitioner contends the admission of Pop's testimony violated her rights under the Confrontation Clause.  The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment).  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an

18

adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  The

Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at

a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity

for cross-examination.  *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

Petitioner did not raise this issue on direct appeal, but her husband did.  The

Michigan Court of Appeals resolved his claim as follows:

> Anthony argues that the admission of the preliminary examination testimony of
> Gustavo Pop, one of the firemen who responded to the fire, violated his right of
> confrontation because he never had an adequate opportunity to cross-examine Pop.
> Defense counsel, however, stipulated to the admission of Pop's preliminary
> examination testimony.  A "[d]efendant may not assign error on appeal to
> something that his own counsel deemed proper at trial."  *People v Barclay*, 208
> Mich App 670, 673; 528 NW2d 842 (1995).  Accordingly, Anthony is precluded
> from arguing on appeal that the admission of Pop's preliminary examination
> testimony violated his right of confrontation.
>
> However, Anthony claims that defense counsel was ineffective for stipulating to
> the admission of Pop's preliminary examination testimony.  The Confrontation
> Clause bars the admission of testimonial statements of a witness who does not
> testify at trial unless the witness was unavailable to testify, and the defendant had a
> prior and adequate opportunity to cross-examine the witness.  *Crawford*, 541 US at
> 57, 68.    Testimonial statements include testimony given at a preliminary
> examination.  *Id*. at 68.  Anthony does not dispute that Pop was unavailable for trial
> and that he had an opportunity to cross-examine Pop at the preliminary
> examination.  He claims that because the preliminary examination occurred more
> than one year before trial and because a different standard of proof is employed at
> a preliminary examination than at trial, he did not have an adequate opportunity to
> cross-examine Pop.  The purpose of a preliminary examination is to determine
> whether a crime has been committed and, if so, whether there is probable cause to
> believe that the defendant committed the crime.  *People v Henderson*, 282 Mich
> App 307, 312; 765 NW2d 619 (2009).  Admittedly, the standard of proof at a
> preliminary examination is lower than the standard of proof at trial.  See *id*.
> However, because the purpose of the preliminary examination was to establish
> whether there was evidence that Anthony committed the charged offenses, Anthony
> had an adequate opportunity to confront Pop at the preliminary examination.
> Accordingly, any objection by defense counsel to the preliminary examination
> testimony of Pop would have been futile.  Counsel was not ineffective for failing
> to make a futile objection.  *Fike*, 228 Mich App at 182.  Defense counsel's
> performance in stipulating to the admission of Pop's preliminary examination
> testimony did not fall below objective standards of reasonableness.

(Mich. Ct. App. Op., ECF No. 8-38, PageID.3715-3716.)

Petitioner raised the issue for the first time in her first motion for relief from judgment.  (Mot. for Relief from J., ECF No. 8-32.)  She basically copied the issue as her husband had raised it on direct appeal.  Her husband had pointed out that his counsel did not cross-examine Pop at the preliminary examination.  In repeating her husband's issue, Petitioner repeats that claim—asserting that her counsel did not cross-examine Pop.  In Petitioner's case, however, that assertion is plainly false.   Most of Pop's testimony was cross-examination by Petitioner's trial counsel.  (Prelim. Exam. Tr. I, ECF No. 8-2, PageID.423-429)

The trial court refused to consider the issue because the issue had been raised on direct appeal and decided.  The issue was raised by Petitioner's husband and decided against him— it was not decided against Petitioner. Nonetheless, the court of appeals and the supreme court upheld the trial court's rejection of the claim.

The best explanation of Pop's absence from the trial appears in the prosecutor's opening argument:

> Gustavo Pop.  You see it says DVD.  Gustavo Pop is a firefighter for the Centreville Fire Department.  He was the first person inside of the house when the fire was happening.
>
> Unfortunately—He was able to testify at the preliminary examination when we had it.  He's in the military, and he's stationed, I believe, in Texas; so he was not able to come.  Had we brought him back here, the training that he's involved in would have—He would have had to stop and then go back and start it all over again.
>
> So Mr. Bland, Mr. Bush, and I talked about it, and they agreed we're just going to play the DVD of his testimony for you from the preliminary examination.  So just because it's on a DVD doesn't mean that it's not the same evidence as if he were sitting right here today.  It's just—That's why you're going to see a DVD.

(Trial Tr. II, ECF No. 8-15, PageID.1498.)  Petitioner does not argue that the admission of Pop's preliminary examination testimony was improper because Pop was not unavailable.  Instead, she focuses on preliminary examination testimony as not offering a sufficient opportunity for cross-

examination to overcome the confrontation problem.  The court of appeals disagreed, reasoning that Petitioner's husband "had an adequate opportunity to confront Pop at the preliminary examination.  (Mich. Ct. App. Op., ECF No. 8-38, PageID.3716.)  For that reason, the court of appeals concluded that any objection would have been futile.

The Sixth Circuit has noted that there exists "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes."  *Al-Timimi v. Jackson*, 379 F. App'x 435, 437-38 (6th Cir. 2010) (citing, *inter alia, Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-Crawford understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination") (internal quotation marks omitted)).  But the Supreme Court has never held that a defendant is denied his rights under the Confrontation Clause when a witness is unavailable at trial and the court admits the witness's preliminary examination testimony.  *Id.*, at 438. As a result, in the context of a federal court sitting on habeas review, the Sixth Circuit has concluded that a state court's determination that testimony from the preliminary examination was properly admitted was not an unreasonable application of clearly established Supreme Court precedent.  *Id.* at 438-40; *see also Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *Al-Timimi* with approval and upholding on habeas review the admission of testimony from the petitioner's own preliminary examination).

This Court must defer to the state court of appeals' determination that the admission of Pop's preliminary examination testimony did not violate confrontation rights because it is not contrary to, or an unreasonable application of, clearly established federal law.  That reasonable application of *Crawford*, in turn, has precisely the effect the court of appeals identified: it renders

a confrontation objection to the admission of the preliminary examination testimony futile. Counsel's failure to raise a meritless issue does not constitute ineffective assistance. *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'"). Accordingly, Petitioner is not entitled to habeas relief on her final claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:   January 31, 2020                              /s/ Ray Kent
                                                       Ray Kent
                                                       United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).